UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIAS NASIRI,<br><br>    Plaintiff,<br><br>    v.<br><br>T.A.G. SECURITY PROTECTIVE SERVICES, INC., et al.,<br><br>    Defendants. | Case No. 18-cv-01170-NC<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 141 |

Before the Court is defendant Personnel Staffing Group, LLC's ("PSG") motion for summary judgment. *See* Dkt. No. 141. According to PSG, it only provided payroll and workers' compensation services to co-defendant T.A.G. Security Protective Services, Inc. ("TAG") and is therefore not liable for TAG's alleged violations of California and federal labor laws. Nasiri disagrees and argues that there is a genuine dispute of material fact as to whether PSG was his employer. The Court concludes that PSG was not Nasiri's employer for purposes of California and federal labor laws. Accordingly, the Court GRANTS PSG's motion for summary judgment.

## I. Background

### A. Factual Background[1]

TAG is a security guard and patrol services company. *See* Dkt. No. 142, Ex. 7. In June 2015, TAG hired Nasiri as a security guard. *See* Dkt. No. 155-3 ("Nasiri Decl.") ¶ 2. TAG provided Nasiri with training and work assignments during the term of his employment. *See* Dkt. No. 157-2 ("Murga Depo.") at 103:13–16, 113:11 – 114:2.[2] No other company, including PSG, had the right to control TAG's activities. *See id.* at 105:20–106:9.

PSG is a back-office solutions company. *See* Dkt. No. 155-2, Ex. E ("Grottolo Depo.") at 17:7–13, 18:16–19. It provides a range of services including payroll processing and financing. *Id.* at 18:20–19:17. PSG also contracts with staffing companies to issue workers' compensation insurance on their behalf. *Id.* at 20:12–23.

On October 1, 2016, PSG began providing payroll processing for TAG and secured workers' compensation insurance for TAG employees. *See* Dkt. No. 141-2 ("Grottolo Decl.") ¶ 3.[3] As part of that relationship, PSG became a named employer for Nasiri for payroll and workers' compensation purposes. *See id.* ¶ 5. PSG did not control any day-to-day aspects of Nasiri's employment, including wages, working conditions, termination, and supervision. *Id.* at 110:5–112:15. Nonetheless, Nasiri signed an employment

---

[1] The following facts are undisputed except where otherwise indicated. The Court will also address each parties' objections to the evidence where necessary.

[2] Nasiri objects to this exhibit, arguing that this deposition constitutes new evidence presented for the first time in a reply. *See* Dkt. No. 159. This deposition, however, is not evidence presented to Nasiri for the first time. Rather, the deposition was part of a Court-ordered compromise to allow Nasiri to obtain additional evidence in support of his opposition to PSG's motion. *See* Dkt. Nos. 153, 154. Accordingly, the Court OVERRULES Nasiri's objection.

[3] Nasiri objects to this assertion, claiming lack of foundation and personal knowledge. *See* Dkt. No. 155-1 at 1. Grottolo is PSG's Director of Managed Services and oversees PSG's managed services business relationships. *See* Grottolo Decl. ¶ 1; *see also* Grottolo Depo. at 17:7–21. In that capacity, Grottolo would have personal knowledge of when PSG begins business relationships with its clients, such as TAG. Nasiri provides no evidence to contradict Grottolo's assertion. Accordingly, the Court OVERRULES Nasiri's objection.

agreement with PSG on October 27, 2016. *See id.*, Ex. 4. That agreement provided that Nasiri was an at-will employee for PSG. *See id.* PSG ended its relationship with TAG on October 29, 2016. *See* Grottolo Decl. ¶¶ 4, 5.[4]

### B. Procedural History

On May 22, 2019, Nasiri filed his second amended complaint alleging claims for (1) failure to pay overtime, Cal. Lab. Code § 510; (2) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207; (3) failure to provide meal and rest breaks, Cal. Lab. Code §§ 226.7, 512; (4) failure to pay timely wages, Cal. Lab. Code § 204; (5) failure to furnish complete and accurate itemized wage statements, Cal. Lab. Code §§ 226(a), 226.3; (6) failure to pay all wages upon termination, Cal. Lab. Code §§ 201, 202; (7) failure to reimburse for business expenses, Cal. Lab. Code § 2802; (8) failure to pay wages for split shifts, Industrial Wage Commission ("IWC") Order 4-2001(4)(C); and (9) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.* *See* Dkt. No. 80 ("SAC").

On June 10, 2020, PSG moved for summary judgment. *See* Dkt. No. 141. The parties conducted further discovery before Nasiri filed his opposition. *See* Dkt. Nos. 149, 153, 154, 155. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 8, 21, 28, 108, 109.

## II. Legal Standard

Under Federal Rules of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Once the moving party meets its burden, then the non-moving party must cite "particular parts of materials in the record" showing that there is a genuine issue for trial. Fed. R. Civ.

---

[4] Nasiri objects to this assertion, again claiming lack of foundation and personal knowledge. *See* Dkt. No. 155-1 at 1. The Court OVERRULES Nasiri's objection for the same reasons stated in footnote 1.

P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A "genuine issue" exists if a reasonable jury could find for the non-moving party. E.g., *Open Text v. Box, Inc.*, No. 13-cv-04910-JD, 2015 WL 428365, at *1 (N.D. Cal. Jan. 30, 2015). On summary judgment, the Court does not make credibility determinations or weigh conflicting evidence, as these determinations are left to the trier of fact at trial. *Bator v. State of Hawaii*, 39 F.3d 1021, 1026 (9th Cir. 1994).

**III. Discussion**

The primary issue here is whether PSG was Nasiri's employer for purposes of his claims under California's labor laws and the FLSA. The Court concludes that PSG was not.

    **A.  Employment under California Labor Laws**

California law applies three alternative definitions of employment for purposes of its labor laws. *See Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1429 (2010) (citing *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010)). Employment means: "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." *Id.*

First, there is no evidence suggesting that PSG exercised any control over Nasiri's wages, hours, or working conditions. In his declaration, PSG's Director of Managed Services Darron Grottolo stated that PSG had no authority to and did not set Nasiri's wages, hours or working conditions. *See* Grottolo Decl. ¶ 9.

Nasiri contends that Grottolo's declaration should not be credited because he lacks personal knowledge of those assertions. Specifically, Nasiri points to deposition testimony where Grottolo stated that he had no personal knowledge of whether KBS Staffing provided staffing services or set Nasiri's pay, work schedule, or working conditions. *See* Dkt. No. 155 at 10–11. Although PSG occasionally did business under the name KBS Staffing, Grottolo's deposition makes clear that the line of questioning relied upon by Nasiri referenced a different business entity, not PSG:

    Q: Well, did KBS Staffing ever provide services to TAG Security Protective

| | |
|---|---|
| 1 | Services, Inc.? |
| 2 | A: Okay. Yes.Yes. |
| 3 | Q: And when did KBS Staffing begin providing services to TAG Security? |
| 4 | A: I don't know. |
| 5 | Q: And what services did KBS Staffing provide to TAG Security? |
| 6 | A: I believe they were the payroll provider for them.  They provided payroll |
| 7 | services. |
| 8 | Q: And did they provide any other services other than payroll services? |
| 9 | A: I don't know. |
| 10 | … |
| 11 | Q: Did you have any responsibility over any functions at KBS Staffing in |
| 12 | October 2016? |
| 13 | A: No. |
| 14 | Q: Who did? |
| 15 | A: Nobody would.  They were a customer. |

Grottolo Depo. at 28:12–21, 29:21–25.  In that same deposition, Grottolo later made clear that PSG provided only payroll processing and worker's compensation for TAG.  *Id.* at 62:7–13, 62:20–63:5.

In the alternative, Nasiri argues that Anthony Murga, TAG's CEO and sole proprietor, acted as PSG's agent when he directed Nasiri's employment.  *See* Dkt. No. 155 at 8–9.  Nasiri points to a set of interrogatories propounded on Grottolo.  *See id.* at 9 (citing Grottolo Depo., Ex. 4).  But none of the interrogatory responses, however, suggest that Murga ever acted as PSG's agent.  Instead, both Murga and Grottolo emphasized in their respective depositions that PSG had no control over TAG's operations.  Therefore, PSG was not Nasiri's employer under the control test.

Second, under the second *Martinez* test for employment, Nasiri must show that PSG "had the power to either cause him to work or prevent him from working" to demonstrate that PSG could cause Nasiri "to suffer or permit to work."  *Futrell*, 190 Cal. App. 4th at

5

1434. There is no evidence suggesting that PSG had such power. Murga testified that PSG had no right to control TAG's activities. *See* Murga Depo. at 105:20–106:9. And Grottolo testified that PSG played no role in Nasiri's employment. *See* Grottolo Decl. ¶ 9.

Finally, the common law test of employment looks to the "control of details." *Futrell*, 190 Cal. App. 4th at 1434 (listing factors). This test does not help Nasiri either. PSG did not control any aspect of Nasiri's employment and only handled payroll processing and workers' compensation insurance. *Futrell* is directly on point. In *Futrell*, the California Court of Appeal held that a payroll processing company's limited activity, *i.e.*, handling payroll services, was insufficient to establish employment over security guards working for a television production company. *See id.* at 1432, 1434. So too here. The fact that Nasiri's employment agreement with PSG specifies that he was an at-will employee of PSG does not change this conclusion. "The parties' use of a label to describe their relationship does not control and will be ignored where the evidence of their actual conduct establishes a different relationship exists." *Id.* at 1435 (citing *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 11 (2007)). Here, there is simply no evidence that PSG controlled any aspect of Nasiri's employment.

Thus, PSG is not Nasiri's employer for purposes of California's labor laws and Nasiri's claims fail. Accordingly, the Court GRANTS PSG's motion for summary judgment on Nasiri's first, third, fourth, fifth, sixth, seventh, and eighth claims.

### B.    Fair Labor Standards Act

The FLSA defines an "employee" as "any individual employed by an employer," and defines an "employer" as "any person [or entity] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d), (e)(1). In the Ninth Circuit, courts apply an "economic reality" test to determine whether an individual was an employee under the FLSA. That test looks to four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Dawson v. Nat'l Collegiate*

*Athletic Ass'n/Pac-12 Conference*, 932 F.3d 905, 910–11 (9th Cir. 2019) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)).

None of those factors are satisfied in this case. TAG, not PSG, had the power to hire and fire Nasiri. *See* Murga Depo. at 103:2–25, 111:11–15. TAG, not PSG, had the power to supervise and control Nasiri's work schedule and conditions of employment. *See id.* at 26:18–21, 111:1–5, 113:11–114:2. Nor did PSG set Nasiri's pay and maintain his employment records. *See* Grottolo Decl. ¶ 9(b), (o). Thus, PSG was not Nasiri's employer under the economic realities test.

Accordingly, the Court GRANTS PSG's motion for summary judgment on Nasiri's second claim.

### C. Unfair Competition Law

The UCL prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Nasiri's UCL claim is predicated on his labor code claims. *See* SAC ¶ 74. Because Nasiri's California and federal labor code claims fail, so does his UCL claim. Accordingly, the Court GRANTS PSG's motion for summary judgment on Nasiri's ninth claim.

### IV. Conclusion

The Court GRANTS PSG's motion for summary judgment. Because no claims remain against PSG, the Court directs the Clerk to terminate PSG as a party.

**IT IS SO ORDERED.**

Dated: September 3, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

7